IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Case No. 5:25-CR-402** |
| Plaintiff, | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **JUSTO AMAYA-CALLES,** | |
| Defendant. | **MEMORANDUM OPINION & ORDER** |

Currently before the Court is Defendant Justo Amaya-Calles's ("Defendant") Motion to Dismiss Counts 2, 3 and 4 filed on October 20, 2025 ("Defendant's Motion"). (Doc. No. 17.) On October 29, 2025, the United States of America filed an Opposition to Defendant's Motion ("the Government's Opposition). (Doc. No. 19.) Defendant filed a Reply in Support of Defendant's Motion on November 5, 2025 ("Defendant's Reply"). (Doc. No. 20.) Accordingly, Defendant's Motion is ripe for a decision. For the reasons set forth below, Defendant's Motion is GRANTED.

**I.     Background**

On August 19, 2025, a federal grand jury returned an Indictment charging Defendant with the following offenses: Illegal Reentry of Removed Alien, in violation of 8 U.S.C. §§ 1326(a) and (b)(2) (Count 1); False Claim to U.S. Citizenship to Engage Unlawfully in Employment, in violation of 18 U.S.C. § 1015(e) (Count 2); Misuse of Social Security Number, in violation of 42 U.S.C. § 408(a)(7)(B) (Count 3); and Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1) (Count 4).  Counts 2, 3 and 4 are the subject of Defendant's Motion.  As to Counts 2, 3 and 4, the Indictment alleges that Defendant's conduct spanned the time frame from March 10, 2016, continuing to on or about August 6, 2025.  (Doc. No. 1, ¶¶ 2, 3, 5.)

The parties agree that a search warrant was executed at AZZ Galvanizing, requesting access to its employment records, specifically any employer eligibility verifications ("Form I-9"). Defendant was arrested during the execution of the search warrant. The Government represents that Defendant assumed the identity of Sol Anjel Melendez Rodriguez ("Rodriguez"), a U.S. citizen who died in 2017, by assuming Rodriguez's social security number and date of birth; and that on March 10, 2016, Defendant signed the Form I-9, Employment Eligibility Verification, falsely claiming to be a U.S. Citizen, using Rodriguez's name and personal identifiers. According to the Government "[b]y signing the Form I-9, Defendant attested, under penalty of perjury, that he was a U.S. Citizen" but he is in fact "an illegal alien who is a citizen of El Salvador" who "lied about his true identity, and his claim that he was a U.S. citizen, to conceal the fact that he was (and still is) in the United States illegally." (Doc. No. 19, PageID # 97.)

The Government represents that "[f]or the entire duration of his employment, the Defendant continued to represent himself as Rodriguez and continued to use Rodriguez's social security number ...." (*Id.*)  Citing to a wage report of AZZ Galvanizing for the first quarter of 2025, the Government contends that "Defendant's assumed Rodriguez identity, [and] social security number ending in 2944, received wages from AZZ Galvanizing, [thereby] [d]emonstrating that the Defendant continued to conceal his true identity and also that he continued to fraudulently use and benefit from the use of the fraudulent social security number." (*Id.*)

Defendant asserts that "[t]here is no indication that [defendant] has completed a Form I-9 since [March 10, 2016] or used the alleged documents in any other manner since March 2016." (Doc. No. 17, PageID # 79.)  Therefore, Defendant moves to dismiss Counts 2, 3 and 4 of the Indictment, arguing that they are barred by the five-year statute of limitations. The Government opposes

2

Defendant's Motion, arguing that these Counts should not be dismissed because they allege continuing offenses, so that the five-year statute of limitations did not begin to run until the commission of the crimes came to an end on August 6, 2025.

## II.	Analysis

Defendant asserts that since the statutes that Defendant is alleged to have violated as set forth in Counts 2, 3 and 4, i.e., 18 U.S.C. §§ 1015(e), 1028A(a)(1), and 42 U.S.C. § 408(a)(7)(B), respectively, do not contain statutes of limitations, they are subject to 18 U.S.C. § 3282. According to Defendant, then, each of these offenses is subject to a five-year statute of limitations and because Counts 2, 3, and 4 capture conduct that occurred on March 10, 2016 when Defendant signed the I-9, or more than five years before the Indictment was filed on August 19, 2025, they must be dismissed. Specifically, Defendant argues that every element of each of the crimes charged in Counts 2, 3, and 4 was accomplished on March 10, 2016, and therefore, the five-year statute of limitations began to run on that date. Defendant maintains that the continuing offense doctrine has no application herein to extend or toll the five-year statute of limitations.

The Government acknowledges that because this is not a capital case, the five-year statute of limitations set forth in 18 U.S.C. § 3282 applies. According to the Government, though, the continuing offense doctrine does apply because the criminal acts with which Defendant has been charged involved a prolonged course of conduct, the completion of which did not occur until the conduct was over, i.e., on August 6, 2025.

The statute of limitation begins to run when the crime is complete. *Toussie v. United States*, 397 U.S. 112, 115 (1970) (quoting *Pendergrast v. United States*, 317 U.S. 412, 418 (1943)). "A crime is complete once every element of the crime has occurred." *United States v. Lutz*, 154 F.3d

581, 586 (6th Cir. 1998) (citation omitted). In *Toussie*, the Supreme Court explained that "the doctrine of continuing offenses should be applied in only limited circumstances" but the considerations underpinning that conclusion[1] "do not mean that a particular offense should never be construed as a continuing one." *Toussie*, 397 U.S. at 115. The Supreme Court concluded that "[t]hese considerations] do, however, require that such a result should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one. (*Id.*)

### A. False Claim to U.S. Citizenship to Engage Unlawfully in Employment, in violation of 18 U.S.C. § 1015(e) – Count 2

Defendant contends that "18 U.S.C. § 1015(e)[2] is not a continuing offense because the language of the statute does not demand that conclusion." (Doc. No. 17, PageID # 80.) Defendant correctly asserts that Congress has not included an explicit provision to describe section 1015(e) as a continuing offense and quotes the Supreme Court's conclusion in *Toussie* that "we conclude that any argument based on congressional silence is stronger in favor of not construing this Act as incorporating a continuing-offense theory." (*Id.* (citing *Toussie*, 397 U.S. at 120).) Defendant interprets the language of section 1015(e) as "refer[ring] to a single moment at which the crime is

---

[1] The considerations underpinning the conclusion or "these considerations" included the following: "'the principle that criminal limitations statutes are 'to be liberally interpreted in favor of repose,' (citations omitted)"; the conclusion that "'statutes of limitations normally begin to run when the crime is complete[]'" (citation omitted); "Congress has declared a policy that the statute of limitations should not be extended '(e)xcept as otherwise expressly provided by law.' 18 U.S.C. § 3282[;]" and the Court of Appeals had "correctly observed in this case, '(t)he tension between the purpose of a statute of limitations and the continuing offense doctrine is apparent; the latter, for all practical purposes, extends the statute beyond its stated term.'" *Toussie*, 397 U.S. at 115.

[2] That statute reads in relevant part: "[w]hoever knowingly makes any false statement or claim that he is, or at any time has been, a citizen or national of the United States, with the intent to obtain on behalf of himself, or any other person, any Federal or State benefit or service, or to engage unlawfully in employment in the United States."

complete – the moment when an individual 'knowingly makes any false statement or claim' – not any continued activity or behavior." (*Id.*)

The Government, in effect, concedes that the language of section 1015(e) does not explicitly state that it is a continuing offense. However, the Government argues that it is a continuing offense because the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one. (Doc. No. 19, PageID # 100 (citing *Toussie*, 397 U.S. at 115; and *United States v. Del Percio*, 870 F.2d 1090, 1095 (6th Cir. 1989).) According to the Government, "[t]he conduct charged in Count 2 'endures beyond the initial illegal act' as the Defendant concealed his true identity, fraudulently used the identity of a U.S. citizen and continued to do so for nearly ten years." (Doc. No. 19, PageID # 100.)

Defendant asserts that no court has addressed the issue of whether a violation of 18 U.S.C. § 1015(e) is a continuing offense and the Government acknowledges that the Sixth Circuit has not addressed whether section 1015(e) is continuing offense for statute of limitations purposes. The bases for their respective arguments are set forth below.

Defendant cites *United States v. Salinas* where the First Circuit concluded that the "plain language of 18 U.S.C. § 1542 makes passport fraud a point-in-time offense. (Doc. No. 17, PageID # 81. *Salinas*, 373 F.3d 161, 169 (1st Cir. 2004).) It was in the context of determining the proper venue for passport fraud prosecution in violation of 18 U.S.C. § 1542 that, after finding that a violation of the statute requires only two things, i.e., (1) the making of a false statement, (2) with the intent to secure the issuance of a passport, the First Circuit concluded that "passport fraud is complete at the moment an applicant makes a knowingly false statement in an application with a view toward procuring a passport[;]" [citation omitted] and "[a]t that point in time, the applicant has violated the

5

statute and, therefore, committed the crime." *Salinas*, 373 F.3d at 165. In *Salinas*, the Court rejected the government's argument that passport fraud could be complete and continuing for purposes of venue, and as Defendant correctly explains, found that "because passport fraud 'requires intent only at the moment the false statement is made,' it cannot be a continuing offense." (Doc. No. 17, PageID #82, citing *Salinas*, 373 F.3d at 168.) According to Defendant, then, because section 1015(e) requires intent, i.e., that someone "knowingly" makes any false statement or claim at the time of the statement, it cannot be a continuing offense.

Defendant also directs this Court's attention to the Fifth Circuit's decision in *United States v. Tavarez-Levario*, 788 F.3d 433, 439 (5th Cir. 2015). Therein, the defendant was charged with using a counterfeit green card and counterfeit social security card and the Court concluded that the "use of a false immigration document" did not constitute a continuing offense. *Tavarez-Levario,*, 788 F.3d at 435. The Court rejected the government's argument that presenting counterfeit documents to an employer, which were then used to maintain his employment, made the crime a continuing offense.

The Government does not respond to or attempt to counter Defendant's reliance on these cases to argue that section 1015(e) is not a continuing offense. Rather, the Government merely asserts that "[t]he nature of the offense that Congress intended to criminalize supports treating this offense as a continuing offense." (Doc. No. 19, PageID # 100.) It then sets forth the elements of the offense of False Claim to U.S. Citizenship to Engage Unlawfully in Employment[3] and contends that "[t]he conduct charged in Count 2 'endures beyond the initial illegal act' as the Defendant concealed his

---

[3] According to the Government, the elements of 18 U.S.C. § 1015(e) are: (1) the defendant was an alien; (2) the defendant knowingly made a false statement or claim that he is or has been a citizen or national of the United States; and (3) the defendant made the false statement or claim for the purpose of obtaining federal benefits, state benefits, federal services, state services to unlawfully gain employment in the United States. (Doc. No. 19, PageID # 100.)

true identity, fraudulently used the identity of a U.S. citizen and continued to do so for nearly ten years." (*Id.*) The Government goes on to argue that "the specific circumstances that form the conduct charged in Count 2 were concealed by the Defendant and therefore tolled the statute of limitations." (Doc. No. 19, PageID # 101.)

In support thereof, the Government cites to the Third Circuit's unreported decision in *United States v. Lazo-Rodriguez*, 569 F. App'x 103 (3rd Cir. 2014). Therein, the defendant appealed his conviction for unlawful reentry in violation of 8 U.S.C. § 1326, after the district court denied his motion to dismiss based on the five-year statute of limitations. The Third Circuit affirmed the district court's judgment upon concluding that the limitations period was tolled by the defendant's "active concealment of deportation history." *Id.* at 104. As the Court stated, "[t]he primary question presented here is whether the Government may be charged with constructive knowledge of the illegal reentry of an alien who has been deported under an assumed name when he presents himself under his true name in his initial encounter with the Government after reentry into the United States." (*Id.* at 106.) The Court answered this question in the negative, finding that because the defendant had engaged in an act of affirmative deception, to impede the Government's ability to detect a violation of § 1326, so too that same act of affirmative deception forfeited the right to charge the Government with constructive knowledge of that same violation for purposes of a limitations defense.

In reply, Defendant contends that because he does not challenge the statute of limitations as it applies to his illegal reentry offense charged in Count 1 of the Indictment, "the analysis for such a charge is irrelevant to that of 18 U.S.C. § 1015(e). This is because courts have concluded that 8 U.S.C. § 1326 is a continuing offense. *See Tavarez-Levario*, 788 F.3d at 439 (listing illegal reentry as a prototypical continuing offense). So, *Lazo-Rodriguez* does not address whether making a false

7

statement at a specific point in time means that a defendant has engaged in concealment." (Doc. No. 20, PageID # 108.)

The Government also contends that the Sixth Circuit's decision in *United States v. Del Percio*, 870 F.2d 1090 (6th Cir. 1989) supports its position. In *Del Percio*, the government argued that the Atomic Energy Act violations had a "possessory" nature and, thus, were continuing offenses. *Id.* at 1096. In support thereof, the government cited *United States v. Jones*, 533 F.2d 1387 where the Sixth Circuit had held that possession of a firearm was a continuing offense because possession was a course of conduct, not an act. *Del Percio*, 870 F.2d 1097 (citing *Jones*, 533 F.2d at 1391). The Court in *Del Percio* rejected the government's argument, finding that there was nothing inherent in the nuclear company's violations to make them a continuing offense. However, as the Government emphasizes here, the Sixth Circuit did note that "the defendants did not attempt to conceal the alleged violations from the NRC or otherwise preclude the government from discovering the alleged offenses. Under different circumstances, a 'possessory' crime might properly be found to constitute a continuing offense because of the nature of the defendant's actions. In this case, however, the government was aware well prior to the expiration of the limitations period that the defendants might be guilty of criminal violations." (*Id.*)

Defendant replies that *Del Percio* does not support the proposition that concealment tolls the statute of limitations until the government can discover a false claim. (Doc. No. 20, PageID # 108.) Defendant submits *Del Percio* only "demonstrates that if a defendant possesses contraband at *different points in time*, these different points in time can support various bases for counts in the indictment. *Id.* at 1096-97 (emphasis added)." (*Id.*) Defendant also contends that *Del Percio* also stands for the proposition that "concealment occurs when a 'defendant . . . attempt[s] to conceal the

8

alleged violations . . . or otherwise preclude[s] the government from discovering the alleged offense" and asserts that the Government has not provided any evidence of such actions by Defendant in this case. (*Id.*, PageID #s 108-09 (quoting *Del Percio*, at 1097).)

The Court would note that in *United States v. Banks*, 708 F.Supp.2d 622 (E.D. Ky. 2010), the Court did rely in part upon *Del Percio* to find that a violation of 42 U.S.C. § 1383a(a)(3)(A) was a continuing offense. In *Banks*, the government alleged that the defendant had begun commingling funds from another individual and knew that this financial arrangement would affect her right to continue receiving social security benefits; and "[m]ore importantly, she allegedly concealed and failed to disclose 'with whom she resided, that individual's income, and their shared expenses'" in violation of the statute for almost fourteen years. *Banks*, 708 F. Supp.2d at 623.

In finding that the violation of 42 U.S.C. § 1383a(a)(3)(A) was a continuing offense, the court in *Banks* first explained that an individual violates that statute when she (1) "conceals or fails to disclose" any event that affects her "initial or *continued* right" to a benefit under Title XVI of the Social Security Act, (2) knows of the occurrence of the event, and (3) does so with an intent to fraudulently secure the benefit "either in a greater amount of quantity than is due or when no such benefit is authorized." (Emphasis added.) *Banks*, 708 F.Supp.2d at 624 (quoting § 1383a(a)(3)(A)). The court then noted that

> *that subsection does not prohibit the misrepresentation itself*. Congress prohibited the act of making a 'false statement or representation to obtain social security benefits in other subsections. [Citation omitted.] *** In § 1383a(a)(3)(A), the so-called "renewed threat of evil Congress sought to prevent" is wrongfully obtaining an "initial or continued right" to a social security benefit. [Citation omitted.] Rather, the continued concealment affects all further benefits going forward. It is that course of conduct, like in other continuing offenses, that distinguishes § 1383a(a)(3)(A) from an offense that is continuing. *That course of conduct continues beyond making a single false statement or representation*. (Emphasis added.) *Id.* *** Section 1383a(a)(3)(A) contains the type of concealment crime

9

that is alluded to in *Del Percio*. *** Here, the government had no way of knowing that an event affecting Banks's right to social security occurred because she allegedly concealed the event. The 'inherent' continuing nature that was missing in *Del Percio* is present here. The government did not learn of Banks's offense until 2008, because she apparently continued to hide an event that affected her continued right to benefits. *** By its nature, it is a continuing offense."

Thus, in *Banks*, one of the elements of the crime determined by the court to be a continuing offense included concealing or failing to disclose any event that affected an initial or *continued* right to social security benefits and the defendant's course of conduct continued beyond making a single false statement or representation. Here, section 1015(e) prohibits the false statement or claim itself, as distinguished from a continuing course of conduct of concealment. Moreover, while the defendant in *Banks* concealed the event that provided her with continued social security benefits to which she was not entitled, Defendant earned the compensation he received from his employer by working for that employer continuously after he allegedly made the false statement or claim.

The Court finds that section 1015(e) does not contain the type of concealment crime involved in *Banks* or alluded to in *Del Percio*, and for the reasons stated by Defendant, neither *Del Percio* nor *Lazo-Rodriguez* support the Government's position that section 1015(e) qualifies as a continuing offense. The Court finds that all the elements of the crime of False Claim to U.S. Citizenship to Engage Unlawfully in Employment were present and completed when Defendant signed the I-9 on March 10, 2016. *See United States v. Collier*, 68 F. App'x 676, 680 (6th Cir. 2003) (where the Court found that the relevant elements of the false statement offense at issue – (1) a false statement (2) made knowingly (3) for obtaining an SBA loan – were present and completed at the time that the defendant submitted his Personal Financial Statement omitting his personal note, and his SBA loan application containing a false statement regarding his criminal record so as to bar prosecution based upon the five-year statute of limitations).

10

Stated succinctly, the Court finds that the Government has not demonstrated that a section 1015(e) violation is one that Congress must assuredly have intended to be treated as a continuing crime. Therefore, the five-year statute of limitations applies to bar prosecution of Defendant for an alleged violation of 1015(e) with which he is charged in Count 1 and, therefore, Count 1 must be, and is hereby dismissed.

B. Count 3 – Misuse of Social Security Number in violation of 42 U.S.C. § 408(a)(7)(B)

Defendant correctly cites to and relies upon the Tenth Circuit's decision in *United States v. Payne*, 978 F.2d 1177 (10th Cir. 1992) in support of his argument that 42 U.S.C. § 408(a)(7)(B) is not a continuing offense. Indeed, the Government "recognizes that several Circuits have held that this specific statute is not a continuing offense." (Doc. No. 19, PageID # 104). Nonetheless, the Government argues that "[f]or similar reasons submitted for Count 2, the conduct charged in Count 3 'endures beyond the initial illegal act' as the Defendant concealed his true identity, fraudulently used the social security number of a U.S. citizen and continued to do so for nearly ten years." (*Id.*)

This Court has found the Government's reasons proffered to support its argument that section 1015(e) is a continuing offense, to be unpersuasive, and finds them unpersuasive to support the Government's position that 42 U.S.C. § 408(a)(7)(B) is a continuing offense. Accordingly, the five-year statute of limitations applies to bar prosecution of Defendant for an alleged violation of 42 U.S.C. § 408(a)(7)(B) and Count 3 is hereby dismissed.

C. Count 4 – Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1)

The parties agree that Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1) is a continuing offense only when it is predicated on a continuing offense and that if Counts 2 and 3 are time barred by the five-year statute of limitations, then so too, is Count 4. Since the Court has

determined that both Counts 2 and 3 are time-barred by the five-year statute of limitations, then Count 4 is also time-barred.  Therefore, Count 4 of the Indictment is also dismissed.

**III.     Conclusion**

For the reasons set forth above, Defendant's Motion is GRANTED.  Counts 2, 3 and 4 of the Indictment are hereby dismissed as time barred.

**IT IS SO ORDERED.**

Date:  December 5, 2025

　_s/Pamela A. Barker_　
PAMELA A. BARKER
U. S. DISTRICT JUDGE